FILED
SUPERIOR COURT
OF GUAM

2025 DEC -9 PM 3: 16

CLERK OF COURT

BY: _____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PING CHUNG TSANG<br><br>Plaintiff,<br><br>vs.<br><br>WING ON TSANG, KAM WING TAM, WING CHI TSANG, TSANG BROTHERS CORPORATION, HARMON TRUCKING & SCRAP METAL, INC., and EVERGREEN INVESTMENT, LLC,<br><br>Defendants. | CIVIL CASE NO. CV0897-15 |
| WING ON TSANG, KAM VENG TAM (a/k/a KAM WING TAM), and WING CHI TSANG,<br><br>Counterclaimants,<br><br>vs.<br><br>PING CHUNG TSANG and CHRISTINA L.H. AU (a/k/a AU LAI HING),<br><br>Counterclaim Defendants. | DECISION AND ORDER RE MOTIONS TO DISMISS |

This matter came before the Honorable Dana A. Gutierrez on four Motions to Dismiss filed

by Defendants Tsang Brothers Corporation ("TBC"), Harmon Trucking & Scrap Metal, Inc.

("HTSM"), Evergreen Investment LLC ("Evergreen"), and Counterclaim Defendant Christina Au.

The Court held a motion hearing on these motions on June 17, 2025. Present at the hearing were Attorney Geri Diaz for Defendants TBC and HTSM, Attorney Georgette Concepcion on behalf of Defendant Evergreen, Attorney Ignacio Aguigui for Counterclaimants Wing On Tsang, Wing Veng Tam, and Wing Chi Tsang, and Attorney William Gavras for Counterclaim Defendant Christina Au.[1] Upon review of the moving documents, arguments, and applicable law, the Court issues its ruling as set forth below.

## BACKGROUND

Plaintiff Ping Chung "Larry" Tsang ("Larry") filed his Verified Complaint on September 15, 2015. The Complaint alleges that Larry,[2] a Guam resident and minority shareholder, brings suit against his brothers Wing On "Norman" Tsang ("Norman") and Wing Chi Tsang ("Wing Chi"), his brother-in-law Kam Wing "Kevin" Tam ("Kevin"),[3] and related family-owned business entities—TBC, HTSM, and Evergreen—arising from a long-running dispute over the operation and control of these shared family businesses in Guam. *See* Compl. ¶¶ 1–2.4, 2.5–2.8. Larry alleges that he holds a 20% interest in TBC, while Norman and Kevin each hold 20%, and Wing Chi holds 35%, with business operations commingled across entities and conducted under common control. *See id.* ¶¶ 5, 11. He also alleges a 47.5% ownership interest in HTSM, equal to Norman's share, and a 25% interest in Evergreen, where he was designated General Manager. *See id.* ¶¶ 12, 15. The Complaint alleges that corporate formalities were disregarded, assets and books were commingled, meetings were improperly noticed or not held, and he was ultimately removed from management without lawful process. *See id.* ¶¶ 9, 11, 14, 16–18. Larry further alleges that, after terminating his

---

[1] Attorney Curtis Van de Veld, counsel for Plaintiff Ping Chung "Larry" Tsang, was not present at the hearing.
[2] Because this case involves parties that are related, the Court addresses the parties on a first-name basis to avoid confusion.
[3] Kam Wing Tam is also known as Kam Veng Tam.

2

salary and excluding him from decision-making, the individual defendants continued drawing compensation while freezing him out as a shareholder, director, officer, and manager. *See id.* ¶¶ 18–21, 23–26.

Larry asserts four causes of action arising from what he characterizes as a wrongful freeze-out by his brothers and brother-in-law from TBC, HTSM, and Evergreen. First, he brings a claim for breach of fiduciary duty, alleging that Norman, Kevin, Wing Chi, and the corporate entities deprived him of a corporate office, salary, voting rights, and his pro-rata share of income and control. *See* Compl. ¶¶ 22–28. Second, he asserts a shareholder derivative claim seeking to separate commingled assets, restore proper governance, and enforce compliance with the companies' founding documents. *See id.* ¶¶ 29–31. Third, he seeks an accounting, partition, and dissolution of TBC, HTSM, and Evergreen, alleging that their continued operation is untenable under current conditions. *See id.* ¶¶ 32–35. Fourth, he seeks preliminary and permanent injunctive relief to prevent other shareholders from holding corporate or limited liability company ("LLC") meetings in his absence, asserting that such actions would cause irreparable harm. *See* Compl. ¶¶ 36–40.

On December 9, 2015, TBC, HTSM, and Evergreen each moved to dismiss the Complaint. *See* Mot. to Dismiss Compl. Against Defs. Tsang Bros. Corp. & Harmon Trucking & Scrap Metal, Inc. at 1 ("TBC's Mot."); Evergreen Inv. LLC's Mot. to Dismiss at 1 ("Evergreen's Mot."). Before responding to these Motions to Dismiss, Larry filed an Ex Parte Application for Issuance of a Temporary Restraining Order and Order for Preliminary Hearing on December 21, 2015. Presiding Judge Lamorena denied both Larry's request for a temporary restraining order and a pendente lite injunction to stop shareholders' meetings at TBC and HTSM in a Decision and Order issued on

3

December 28, 2015.[4] Decision and Order on Pl.'s Ex Parte Appl. for Issuance of a TRO and Order for Prelim. Hr'g at 5 (Dec. 28, 2015) ("P.J. Lamorena's Decision"). Thereafter, Larry filed an omnibus opposition on January 7, 2016, contesting all three motions and seeking leave to amend. Opp'n to Mots. to Dismiss by TBC and HTSM and Mot. to Dismiss by Evergreen ("Pl.'s Opp'n"). On January 20, 2015, TBC and HTSM filed their reply. On January 21, 2015, Evergreen filed its reply.

On December 9, 2015, Defendants Norman and Kevin also filed their Answer and Counterclaims, and Defendant Wing Chi filed his on January 11, 2016. The Answer and Counterclaims of Norman/Kevin and Wing Chi are identical in stating their seven counterclaims, which can be summarized as follows [5] Norman, Kevin, and Wing Chi (collectively, "Counterclaimants") allege breach of fiduciary duty by Larry as a shareholder and manager in a closely held corporation and as a member of Evergreen (First and Third Claims), *see* Answer and Counterclaims by Norman and Kevin ("Countercls.") ¶¶ 43–52, 62–70; Christina Au's ("Christina")[6] participation in and aiding and abetting Larry's breaches of fiduciary duty (Second and Fourth Claims), *see id.* ¶¶ 53–61, 71–79; fraud and fraudulent nondisclosure by Larry in concealing his self-dealing and diversion of funds (Fifth and Sixth Claims), *see* id. ¶¶ 80–88, 89–96; and conspiracy by both Larry and Christina to defraud the counterclaimants and other owners of TBC and Evergreen (Seventh Claim), *see* id. ¶¶ 97–102.

---

[4] This matter was initially assigned to Presiding Judge Alberto C. Lamorena III, who handled the proceedings through the stay period. Presiding Judge Lamorena entered his disqualification in this matter on March 26, 2021, and the case was reassigned to this Court on March 30, 2021. *See* Notice of Judge Assignment (March 30, 2021).

[5] Because the Counterclaims are identical, the Court will cite only to Wing Chi's Answer and Counterclaims, Christina's Motion to Dismiss Wing Chi's Counterclaims, and Wing Chi's Opposition to that Motion, unless otherwise specified.

[6] Christina Au is Larry's wife.

4

Christina moved to dismiss the Norman/Kevin counterclaims on January 19, 2016, and moved to dismiss the Wing Chi counterclaims on April 26, 2016. Counterclaimants Norman and Kevin filed their Opposition to Christina's Motion to Dismiss on May 16, 2016 and Wing Chi filed his on May 24, 2016. Christina did not reply.

The matter was effectively suspended for several years due to a stay first entered on February 25, 2016, when the parties stipulated to pause proceedings to pursue settlement, and then reimposed on June 20, 2016, pending resolution of a Motion to Enforce Settlement and a Motion to Strike Appearance and Dismiss that Larry and Christina filed on May 23, 2016. *See* Decision and Order Granting Mot. to Set Aside Entry of Default at 2–3 (Sept. 9, 2024). During this time, the action was stayed except for limited discovery on the issues raised in the Motion to Enforce Settlement. *See* Order Clarifying Stay (Mar. 30, 2017). The stay was not lifted until November 19, 2021, when the parties stipulated to Larry and Christina withdrawing their Motion to Enforce Settlement, resolving "all issues causing the matter to be stayed." *See* Decision and Order Granting Mot. to Set Aside Entry of Default at 3. No substantive filings followed the withdrawal of the Motion to Enforce Settlement until TBC and HTSM filed an Application for Entry of Default on November 6, 2023, which resulted in the Clerk entering default against Larry and Christina. *See id.* at 3. The Court set aside the default on September 9, 2024. *See id.* On December 23, 2024, the Court granted the parties' proposed Order re Pending Motions, which notes that "a significant amount of time ha[d] passed since the initial briefing in connection with [the Motions to Dismiss]." In light of this, the Court permitted the parties to file supplemental briefs, if any, addressing "any new legal authority" arising after the Motions to Dismiss were filed and that supported the positions taken in those Motions. Order re Pending Motions at 2 (Dec. 23, 2024). No supplemental briefing was filed.

5

On June 17, 2025, the Court held a motion hearing on the pending Motions to Dismiss. Following this hearing, the Court issued an Order for Further Briefing regarding what effect, if any, TBC and HTSM's opting into the Guam Business Corporation Act has on the motions to dismiss. Order for Further Briefing at 1 (Jun. 25, 2025). TBC and HTSM submitted supplemental briefing on July 25, 2025; Larry filed supplemental opposition on August 18, 2025; and TBC and HTSM replied on September 2, 2025. On September 9, 2025, the Court took under advisement the following motions: (1) the December 9, 2015 Motion to Dismiss filed by TBC and HTSM; (2) Evergreen's December 9, 2015 Motion to Dismiss; (3) Christina's January 19, 2016 Motion to Dismiss counterclaims asserted by Norman and Kevin; and (4) her April 26, 2016 Motion to Dismiss counterclaims asserted by Wing Chi. *See* Under Advisement Notice at 2 (Sept. 9, 2025).

**DISCUSSION**

Given the extensive briefing submitted, for clarity's sake, the Court proceeds as follows. First, the Court sets forth the legal standard governing motions to dismiss. The Court then addresses, in turn: (1) TBC's and HTSM's Motion to Dismiss; (2) Evergreen's Motion to Dismiss; and (3) Christina's two Motions to Dismiss. Christina's motions are considered together because, as noted above, the counterclaims filed by Norman and Kevin are identical to those filed by Wing Chi, and Christina's challenges to those counterclaims are likewise identical.

## I.     Legal Standard in Deciding a Motion to Dismiss

"In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept all the well-pleaded facts as true, 'construe the pleading in the light most favorable to the non-moving party, and resolve all doubts in the non-moving party's favor.'" *Guam Police Dep't v. Guam Civ. Serv. Comm'n (Charfauros)*, 2020 Guam 12 ¶ 8 (quoting *First Hawaiian Bank v. Manley*, 2007 Guam 2 ¶ 9). "Dismissal for failure to state a claim is appropriate only 'if it appears beyond doubt that

6

the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief.'" *Cruz v. Cruz*, 2023 Guam 20 ¶ 10 (citing *Taitano v. Calvo Fin. Corp.*, 2009 Guam 9 ¶ 6) (alteration in original).

## II. Motion to Dismiss by TBC and HTSM

TBC and HTSM moved to dismiss Larry's claims on several grounds. First, they argue the Complaint fails to state a claim for breach of fiduciary duty because a corporation does not owe fiduciary duties to its shareholders. TBC's Mot. at 3–4. Second, they contend that the derivative claim must be dismissed because Larry did not comply with Guam Rules of Civil Procedure ("GRCP") Rule 23.1's demand requirement, which requires a shareholder to first request corporate action before filing suit. *Id.* at 4–5. Third, they seek dismissal of the dissolution, accounting, and partition claims: (1) because not all necessary parties were joined, including minority shareholder Richard Lai[7]; (2) because an accounting claim belongs to the corporation, not an individual shareholder; (3) because Larry lacks standing to partition corporate assets he does not personally own; and (4) because involuntary dissolution is an extreme remedy unsupported by allegations of insolvency or failure of purpose. *See id.* at 6–10. Finally, they argue the injunctive relief claim fails because the alleged harm has passed and corporate meetings need not be delayed to accommodate a shareholder's travel schedule. *See id.* at 10.

### A. Larry Failed to State a Claim for Breach of Fiduciary Duty Because TBC and HTSM Do Not Owe Him a Fiduciary Duty

"It is only logical that in order for there to be a breach of fiduciary duty, there must first be a definite fiduciary duty in existence." *Lujan v. J.L.H. Tr.*, 2016 Guam 24 ¶ 20. Generally, a

---

[7] At the motion hearing on June 17, 2025, Defendants TBC and HTSM withdrew the argument on failure to join an indispensable party because Richard Lai transferred his shares back to TBC and Evergreen and resigned from both companies in 2016. Min. Entry at 10:29:25-10:30:15 (Jun. 17, 2025). The Court therefore will not address this argument in this Decision and Order.

7

fiduciary duty exists between directors and shareholders, *see Yokeno v. Lai*, 2014 Guam 18 ¶ 12 (noting that "[one's] legal duties as officer and director are owed to the shareholders of the corporation"), or between directors and corporations, *see Dai-Ichi Hotel Overseas Dev. Co. v. Price*, Civ. No. 80-0203A, 1982 WL 33171, at *7 (D. Guam App. Div. Nov. 15, 1982) ("As a general rule, directors of a corporation have a duty to act in good faith and unselfishly toward the corporation."). In general, such fiduciary duty does not exist between a corporation and its shareholders. *See e.g., Peacock v. Herald Square Loft Corp.*, 889 N.Y.S.2d 22, 23 (N.Y. App. Div. 2009) ("[D]efendants correctly point out that 'a corporation does not owe fiduciary duties to its members or shareholders.'"); *In re Stillwater Cap. Partners Inc. Litig.*, 851 F. Supp. 2d 556, 573 (S.D.N.Y. 2012) ("A corporation does not owe a fiduciary duty to its shareholders; for this reason, plaintiffs' breach of fiduciary duty claims against Gerova are dismissed for failure to state a claim."); *Friedli v. Silver Star Props. REIT, Inc.*, 2024 WL 1406329, at *3 (D. Md. Feb. 15, 2024) ("[A] corporation does not owe fiduciary duties to its shareholders.").[8] If Larry fails to prove the existence of a fiduciary duty that TBC or HTSM owe him, his claim of breach of fiduciary duty must be dismissed as to these Defendants. *See In re Stillwater Cap. Partners Inc. Litig.*, 851 F. Supp. 2d at 573; *Friedli v. Silver Star Props. REIT, Inc.*, 2024 WL 1406329 at *3.

Here, Larry claims damages under 20 GCA § 2120 for the alleged breach of fiduciary duty by TBC and HTSM. *See* Compl. ¶ 27. Because § 2120 awards damages only for breaches "not arising from contract," the breach of fiduciary duty Larry alleges must arise either from statute or from case law. Nonetheless, the sole case law that Larry points to in the Complaint is *Southern*

---

[8] Neither this Court, nor Plaintiff, can point to a Guam case or statute that holds a corporation owes a fiduciary duty to its shareholders. "Since no statute addresses the matter on Guam, this [C]ourt must rely on other jurisdictions for guidance." *See Gov't of Guam v. FHP, Inc.*, Civ. No. 90-00014A, 1991 WL 275584, at *6 (D. Guam App. Div. July 10, 1991).

*Pacific Company v. Bogert* which purportedly supports the proposition that the "majority shareholders owe a fiduciary duty to minority shareholders to protect the corporate assets and to share pro-rata equally with the minority." *See* Compl. ¶ 23 (citing *Southern Pacific Company v. Bogert*, 250 U.S. 483, 492 (1919)). Larry's reliance on this case is misplaced as the issue is whether TBC and HTSM owe Larry a fiduciary duty, not whether the majority shareholders of those corporations do.

Larry's Opposition to the Motion to Dismiss by TBC and HTSM cites a greater number of cases but fares no better. Most notably, Larry devotes half a page to quoting *Thompson v. Central Ohio Cellular*, beginning with "It is axiomatic that corporations and their officers and directors occupy a fiduciary relationship with corporate shareholders." Pl.'s Opp'n at 2 (citing *Thompson v. Cent. Ohio Cellular, Inc.*, 93 Ohio App. 3d 530, 540, 639 N.E.2d 462, 468 (1994)). This single sentence forms the entire basis of Larry's contention that TBC and HTSM owed him a fiduciary duty. This sentence falls short of establishing a fiduciary duty on the part of these corporations.

A look at more recent interpretations of Ohio law clarifies that "[c]orporations as entities do not owe fiduciary duties to their shareholders or employees." *See Forsman v. Silverstein*, 2025 WL 240920, at *12 n.2 (S.D. Ohio Jan. 17, 2025) (citation omitted); *Steele v. Mara Ents., Inc.*, 2009-Ohio-5716, ¶ 22 ("The majority shareholder, not the corporation, bears the fiduciary obligations."); *Maas v. JTM Provisions Co., Inc.*, 2025 WL 823671, at *15 (S.D. Ohio Mar. 13, 2025) ("Joe's claim against JTM is not cognizable because '[t]here is not, and could not conceptually be any authority that a corporation as an entity has a fiduciary duty to its shareholders.'").

Larry also cites to *O'Reilly v. Transworld Healthcare, Inc.*, a case from Delaware, to argue that "[a] corporation may owe a fiduciary duty to others." Pl.'s Opp'n at 2. Larry misconstrues

9

*O'Reilly*. The Delaware Court of Chancery in *O'Reilly* did not hold that a corporation itself owes fiduciary duties to shareholders or third parties. Rather, the court merely found that the plaintiff had adequately alleged that a corporation called Transworld, as a *controlling stockholder*, owed fiduciary duties to the minority shareholders of another corporation. *See O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902, 912–13 (Del. Ch. 1999). The opinion is therefore consistent with the principle under Delaware law that fiduciary duty runs from those who control the corporation, not from the corporation itself. *See, e.g., Buttonwood Tree Value Partners, L.P. v. R.L Polk & Co.*, No. CIV.A. 9250–VCG, 2014 WL 3954987, at *4 (Del. Ch. Aug. 7, 2014) ("[A] corporation does not owe fiduciary duties to its stockholders."); *Aug. v. Glade Prop. Owners Ass'n, Inc.*, No. 2020-0834-BWD, 2023 WL 3359466, at *4 (Del. Ch. May 11, 2023) ("Fiduciary duties are owed to, not by, the corporation."). Therefore, because TBC and HTSM do not owe Larry a fiduciary duty, Larry's claim of breach of fiduciary duty is insufficiently pled.

In the alternative, Larry has also "move[d] for leave to amend." Pl.'s Opp'n at 4. "[E]ven where amendment is not a matter of right, the court should grant leave to amend 'when justice so requires.'" *Cruz v. Cruz*, 2023 Guam 20 ¶ 17 (citing Guam R. Civ. P. 15(a)). On a motion for leave to amend, a court consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Arashi & Co. v. Nakashima Enters., Inc.*, 2005 Guam 21 ¶ 16 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, amendment would be futile because even if Larry were permitted to amend the Complaint to add further factual allegations, such allegations could not overcome the fundamental legal barrier that fiduciary duties run from directors, officers, or controlling shareholders—not

from the corporate entities themselves. Accordingly, amendment would be futile. Thus, Larry's Motion to Amend is **DENIED** and Larry's claim of breach of fiduciary duty against TBC and HTSM is **DISMISSED**.

### B. Larry Failed to State a Derivative Claim to Separate the Assets of TBC and HTSM Because He Failed to Comply with the Demand Requirement of GRCP Rule 23.1

The threshold issue in Larry's derivative action to separate the assets of TBC and HTSM is whether Larry's Complaint satisfies the demand requirement of Rule 23.1, which states that in a derivative action,

> The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority, and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

"The derivative demand requirement is a mandatory precondition to bringing a derivative action." *See Miesen v. Hawley Troxell Ennis & Hawley LLP*, 2022 WL 1422942, at *25 (D. Idaho May 5, 2022); *In re Cray Inc.*, 431 F. Supp. 2d 1114, 1119 (W.D. Wash. 2006) ("Rule 23.1 is related to the substantive requirement that plaintiffs in shareholder derivative suits must first demand that the corporation take the action that the plaintiffs seek to enforce through the suit.").[9] For corporations like TBC and HTSM, which were incorporated under Guam's General Corporation Law as opposed to the more recent Guam Business Corporation Act, only Rule 23.1 governs the demand requirement. *See Young v. Nguyen*, Super. Ct. Guam CV0901-15 (Dec. & Order at 10, Nov. 1, 2016).

---

[9] "[B]ecause the Guam Rules of Civil Procedure are generally derived from, although not identical to, the Federal Rules of Civil Procedure . . ., federal decisions that construe the federal counterparts to the [GRCP] are persuasive authority." *Portis Int'l, LLC v. Marquardt*, 2018 Guam 22 n.1 (citing *Gov't of Guam v. O'Keefe*, 2018 Guam 4 ¶ 9).

11

Under Rule 23.1, if a plaintiff in a derivative action does not allege that he has made demand on the corporation, he must allege why making such demand would be futile; otherwise, the derivative action must be dismissed. *See id.* ("The Court finds it would be futile for Plaintiff to have to request action be taken by the director . . . Accordingly, the Court will not dismiss the complaint on this ground."); *see also Vanderbilt v. Geo-Energy Ltd.*, 590 F. Supp. 999, 1001 (E.D. Pa. 1984) ("While failure to comply with Rule 23.1 is grounds for dismissal of the complaint, the demand requirement itself may be excused where plaintiff's complaint alleges some facts which show that a demand would be futile.") (citation omitted). Whether plaintiff has met the demand requirement is judged on the face of the complaint. *See Brooks v. Land Drilling Co.*, 564 F. Supp. 1518, 1522 (D. Colo. 1983) ("Where it is obvious from the face of the complaint that the requisite demand upon shareholders was not made and no explanation for the lack of demand is offered, an action by the shareholder will not lie.").

Here, the Complaint neither alleges any effort to make a demand on either TBC or HTSM nor states why making such a demand would be futile. Instead, the Complaint merely alleges what Larry wants. *See* Compl. ¶¶ 30-31 ("Plaintiff . . . seeks to have the court declare which assets . . . belong to each respective legal entity and the relationship between such entities as it determines legally exist and to conform to the mandates of the Articles of Incorporation and Bylaws of the respective corporate Defendant[s] . . . ."). Since Larry neither shows he has made a demand nor the futility of doing so, Larry has not met the demand requirement under Rule 23.1.

Larry also moves, in the alternative, for leave to amend the Complaint if the Court finds that his derivative action is not sufficiently pled. Because an amendment to the Complaint might show compliance with Rule 23.1, the Court **GRANTS** Larry's Motion for Leave to Amend in the alternative and **DENIES** the dismissal as to this claim. *See King v. Terwilliger*, 2013 WL 708495,

12

at *7 (S.D. Tex. Feb. 26, 2013) ("[T]he plaintiff is given LEAVE TO AMEND his complaint within 30 days of the date of this order to comply with Rule 23.1(b)'s pleading standards to demonstrate demand futility . . . .").

**C.** **Larry Failed to State a Claim for Accounting Because Accounting of Corporate Assets Is a Derivative Action that Requires Compliance with GRCP Rule 23.1**

"A derivative action is brought by a shareholder to 'enforce a right of a corporation.'" *Dumaliang v. Silan*, 2000 Guam 24 ¶ 7 (citing Guam R. Civ. P. 23.1). Without a derivative action, a shareholder "do[es] not have standing to pursue personal claims for injuries the corporation suffered." *Arnold v. Melwani*, 2013 WL 205430, at *20 (D. Guam Jan. 9, 2013). The question before the Court then is whether accounting is a derivative action such that Larry must comply with the demand requirement under Rule 23.1.

"It has been held that [a claim for an accounting] may be pursued as [a] derivative action[], not as [a] direct action[]." *See* 19 Am. Jur. 2d *Corporations* § 1946, Westlaw (database updated Nov. 2025). Since a derivative action "enforce[s] a right of a corporation," *see Dumaliang*, 2000 Guam 24 ¶ 7, accounting is a derivative action "when brought in connection with a *corporation's* right to recover corporate funds." *See Oliver & Co. v. Zamber*, 2025 WL 1580288, at *8 (E.D. Mo. June 4, 2025) (citing *Dawson v. Dawson*, 645 S.W.2d 120, 126 (Mo. Ct. App. 1982)) (emphasis in original). Generally, a shareholder does not have an interest in his or her contributions to the capital of the corporation. *See Matter of Guardianship of Moylan*, 2017 Guam 28 ¶ 6 (contrasting shareholder's loan, which is an asset of the shareholder, with a shareholder's "additional contributions to capital," which are not). Therefore, a shareholder seeking accounting of corporate assets alone must bring a derivative action. *See Dooley v. O'Brien*, 226 Ariz. 149, 155, 244 P.3d 586, 592 (Ct. App. 2010) ("Generally, shareholders have no right, title or interest in the corporate

13

property and may not maintain a direct action for an accounting.") (citations and quotations omitted); *see also Fisher v. Big Squeeze (N.Y.), Inc.*, 349 F. Supp. 2d 483, 488 (E.D.N.Y. 2004) ("An action for a corporate accounting brought by a shareholder in the shareholder's individual capacity fails to state a claim under New York law."); *Neese v. Richer*, 428 N.E.2d 36, 37 (Ind. Ct. App. 1981) ("[The plaintiff] brought a shareholder *derivative* action for an accounting and damages.") (emphasis added); *Sinibaldi v. Sinibaldi ex rel. Get Strong, Inc.*, 100 So. 3d 72, 73 (Fla. Dist. Ct. App. 2011) (Under Florida law, an accounting action "could only be brought by a shareholder on behalf of a corporation."). Accounting of corporate assets makes sense as a derivative action also because where the assets belong to the corporation, the right to recover such assets or seek transparency over them should also belong to the corporation. *See* 18 C.J.S. *Corporations* § 477 ("[Derivative action] is a claim that a corporation could bring because the corporation's assets are affected."), Westlaw (database updated May 2025).

Here, Larry is seeking an accounting of *corporate* assets. Specifically, Larry is requesting that TBC and HTSM account to him "for all activities of said entities . . . and for the present assets of the corporate Defendants TBC and HTSM." Compl. ¶ 33; *see* Oppo. at 7 ("seek to separate assets of the business entities"). Therefore, the Court finds that Larry's accounting claim is a derivative action such that Plaintiff must comply with the demand requirement of Rule 23.1 before bringing the action.

Similar to Larry's derivative action to separate the assets of TBC and HTSM, the Court **GRANTS** his Motion for Leave to Amend the accounting claim because an amendment might show compliance with Rule 23.1 and **DENIES** TBC and HTSM's Motion to Dismiss as to the accounting claim.

14

D.  **Larry Failed to State a Claim for Partition Because He Failed to Plead What Property He Seeks to Partition and Whether He Owns Such Property**

Guam law requires that a party seeking partition identify both the property to be partitioned and the ownership interests of all parties claiming an interest in that property. In particular, "the summons must contain a description of the property sought to be partitioned." 7 GCA § 24406. The complaint must also set forth "the interests of all persons in the property, whether such persons are known or unknown." 7 GCA § 24403. And critically, one cannot partition what one does not own: only "co-owners of [a] personal property" may seek partition under 7 GCA § 24402, and only a co-tenant or life tenant may seek partition of real property under 7 GCA § 24401.[10]

Here, Larry has not stated a viable partition claim because he neither identifies the specific property he seeks to partition nor alleges that he personally holds a co-ownership interest in such property. The summonses contain no description of any real or personal property subject to partition, and while the Complaint alleges Larry's ownership of shares in TBC and HTSM, it does not identify "the interests of all persons" in any specific asset allegedly subject to division. Instead, the Complaint vaguely refers to "the personal and real property assets of the Plaintiff and Defendants" without describing what those assets are. *See* Compl. ¶ 33. That is insufficient to support a partition action under Guam law.

Moreover, as TBC and HTSM correctly note, Larry seeks to partition corporate assets that are owned by the corporations—not by the shareholders individually. TBC's Mot. at 8. Larry himself clarifies that his partition action is "based on the inventory and real property assets *of each corporation.*" Opp'n at 6 (emphasis added). Because "[a]n individual shareholder, by virtue of his

---

[10] The Court notes that while Larry seeks "the partition of the personal and real property assets of the Plaintiff and Defendants," Larry only invokes 7 GCA § 24402, which applies solely to the partition of personal property.

ownership of shares, does not own the corporation's assets," *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003), no amendment could transform the corporate assets into Larry's assets for the purposes of this partition action. For that reason, Larry's Motion for Leave to Amend the partition claim is **DENIED** and the partition claim is **DISMISSED**.

### E. Larry's Argument Regarding the Veil-Piercing Doctrine Is Irrelevant as to the Court's Analysis of the Accounting Claim and the Partition Claim

The Court has also considered Larry's argument regarding the veil-piercing doctrine and finds this argument irrelevant to the Court's analysis of the accounting claim and the partition claim. Specifically, Larry argues that "[w]hen other shareholders combine for the purpose of exploiting the assets of the various entities without regard for their separate existence, remedy must lie in the form of accounting and partitioning those assets to establish their separate existence." Pl.'s Opp'n at 7. He then devotes half a page to reciting factors courts consider when determining whether to pierce the corporate veil.

It is unclear how the veil-piercing doctrine advances Larry's claims for accounting or partition. Veil piercing is an equitable remedy that allows courts, in narrow circumstances, to disregard the corporate form and hold shareholders personally liable for corporate debts. *See Associated Ins. Underwriters, Inc. v. Guam Int'l Insurers, Inc.*, Civ. No. 90-00059A, 1991 WL 336911, at *5 (D. Guam App. Div. June 18, 1991) ("The purpose of the doctrine is not to protect every unsatisfied creditor, but rather to afford him protection where some conduct amounting to bad faith makes it inequitable for the owner of a corporation to hide behind its corporate veil.").

However, Larry is not attempting to impose personal liability on the shareholders of TBC HTSM, or Evergreen. Instead, he seeks an accounting and a partition of the companies' assets as a shareholder and member of the corporate entities. It is therefore unclear to the Court how veil

16

piercing, which applies to achieve equitable outcome for a creditor of a corporation under limited circumstances, has any application to Larry's claims. For that reason, the Court finds Larry's argument with respect to piercing the corporate veil inapposite to his claims.

F.     **Larry Failed to State a Claim for Dissolution Because He Does Not Have a Legal Basis for His Action**

1.     **The Guam Business Corporation Act Does Not Apply to Larry's Claim for Dissolution**

A threshold issue in analyzing whether the Court should dismiss Larry's dissolution claim is whether the General Corporation Law or its successor the Guam Business Corporation Act ("GBCA") should govern Larry's dissolution claim. Both TBC and HTSM were incorporated in Guam before the GBCA was passed. At the onset of this lawsuit in 2015, both entities had not adopted the GBCA. *See* TBC's Mot. at 9.

First, the GBCA does not apply to "a corporation organized under the General Corporation Law of Guam prior to the effective date of [the] Act." 18 GCA § 281703. But the Act applies "if [such corporation's] articles of incorporation are amended, in accordance with the provisions of its articles of incorporation, bylaws, and law applicable to such corporation, without regard to this Act, to provide that this Act shall apply to such corporation." 18 GCA § 281702(b). The issue here is: Once a corporation adopts the Act, does the Act apply retroactively to govern the Plaintiff's claim of dissolution, which was filed before the adoption?

The Guam Supreme Court has held that "there is a 'presumption against retroactive application of new laws to pending cases." *Jenkins v. Montallana*, 2007 Guam 12 ¶ 13 (citing *Bank of Guam v. Reidy*, 2001 Guam 14 ¶ 16 n. 2). "As a rule, a statute is presumed to have only prospective effect unless it is made expressly retroactive or is retroactive by 'necessary implication.'" *In re Request of Twenty-Fourth Guam Legislature of Declaratory Judgment*, 1997

17

Guam 15 ¶ 15 (citing *Nelson v. Ada,* 878 F.2d 277, 280 (9th Cir.1989)). If "the purpose of statute is abundantly clear" that it is intended to apply retroactively, the Court will so apply it. *Id.* ¶ 20.

The GBCA is clearly not made expressly retroactive—in fact, it is made expressly *prospective. See* 18 GCA § 1101.1 ("A corporation organized in Guam prior to the effective date of the Guam Business Corporation Act shall not be subject to the Guam Business Corporation Act."). Therefore, the GBCA does not govern Larry's claim of dissolution.

With the GBCA inapplicable here, the Court further finds that the Guam Corporation Law is silent on involuntary dissolution. Therefore, this Court looks to the common law in considering whether Larry has stated a claim for dissolution of TBC and HTSM. *See In re People,* 2024 Guam 17 ¶ 22 ("[W]here the code is silent, the common law governs.").[11]

### 2. Larry Failed to State a Claim for Dissolution Under Common Law

"As a general rule, a minority stockholder or group of stockholders of a going and solvent corporation cannot maintain a suit to have it dissolved or to have its assets distributed." 19 Am. Jur. 2d Corporations § 2350. At common law, a court lacks "the ability to grant petitions for involuntary dissolution of a corporation without express authorization by statute." *See Renbaum v. Custom Holding, Inc.,* 871 A.2d 554, 565 (Md. 2005); *see also Peck v. Jonathan Michael Builders, Inc.,* 2006 WL 3059981, at *5 (R.I. Super. Oct. 27, 2006), *aff'd,* 940 A.2d 640 (R.I. 2008) ("[E]quity courts lack inherent power to dissolve a corporation."); *In re Mut. Bldg. & Inv. Co.,* 15 Ohio Law Abs. 218, 219–20 (Ohio Ct. App. 1933) ("It is a well-settled rule that, in the absence of statutory authorization, a court of equity, in the exercise of its general jurisdiction, has

---

[11] The Court notes that no party, including TBC and HTSM, disputes that the standards governing involuntary dissolution must be drawn from the common law. Defendants themselves concede as much. *See* TBC's Mot. at 9 ("Chapter 5 discusses voluntary dissolution, but not involuntary dissolution, meaning that the court must resort to common law to determine the standards upon which to undertake an involuntary dissolution of a corporation.").

no power to dissolve or wind up the affairs of a corporation."); *Cardoza v. Millington*, 297 P.2d 778, 783 (Cal. Dist. Ct. App. 1956) (noting that Section 404 of the California Civil Code, which provided for involuntary dissolution of a corporation by a shareholder's lawsuit, "was in derogation of the common law").

Under the common law, this Court lacks inherent authority to order the involuntary dissolution of a solvent, operating corporation absent explicit statutory authorization. Because the General Corporation Law contains no provision authorizing judicial dissolution at the request of a minority shareholder, this Court's equitable powers cannot supply what the statute omits. *See Renbaum*, 386 Md. at 47 (holding that courts cannot order "dissolution of a corporation without express authorization by statute"). Larry cites no common law doctrine that would permit dissolution notwithstanding the absence of statutory authorization. Accordingly, even assuming all of his factual allegations are true, he has not stated a legally cognizable claim for involuntary dissolution under common law. And because no amendment could remedy the fundamental lack of legal authority for the relief sought, Plaintiff Larry's Motion for Leave to Amend is **DENIED**, and his claim for dissolution of TBC and HTSM is **DISMISSED**.

### G. Motion to Dismiss by TBC and HTSM Is Moot as to Larry's Claim for Pendente Lite Injunction Because Presiding Judge Lamorena Has Already Denied the Injunction

Previously, Presiding Judge Lamorena "denie[d] [Plaintiff's] request for a preliminary injunction" because Plaintiff "will not suffer irreparable injury," which Presiding Judge Lamorena stressed was the "sine qua non of injunctive relief." *See* P.J. Lamorena's Decision at 4–5 (citing *Siegel v. LePore*, 234 F.3d 1163, 1175-77 (11th Cir. 2000)). In particular, Presiding Judge Lamorena found Plaintiff's assertion of harm was "too speculative for a temporary restraining order or preliminary injunction to issue." *Id.* at 5. Because Presiding Judge Lamorena has already

19

denied Plaintiff's request for preliminary injunction, the Court finds Defendants' Motion **MOOT** as to this request.

### H. The Prior Denial of Temporary Relief Does Not Preclude Permanent Injunctive Relief

After Presiding Judge Lamorena denied Larry's request for temporary restraining order and preliminary injunction, *see* P.J. Lamorena's Decision at 5, TBC and HTSM asserted that "the Court rejected Plaintiff's assertions that he would suffer irreparable injury if the meetings proceeded." Reply at 7–8. Because the Court "has . . . substantively addressed [Larry's] concerns regarding the holding of shareholder and director meetings," Larry's request for permanent injunction is moot. *Id.* at 8. Larry countered that "[w]hile the [C]ourt ruled that injunction by Temporary Restraining Order would not be allowed, such does not prevent on the full presentation of the evidence at trial the [C]ourt from imposing future relief against continuing freeze-out of Plaintiff." Opp'n at 10.

Larry has the better of the argument. The standard for a preliminary injunction differs from the standard for a permanent injunction, even though "both require a showing of irreparable harm which cannot be remedied through monetary compensation." *See Gov't of Guam v. Gutierrez*, 2015 Guam 8 ¶ 35 n.8. To obtain a preliminary injunction, "[a] plaintiff must show that he *will* suffer irreparable injury and that he otherwise lacks an adequate remedy at law." *Mack v. Davis*, 2013 Guam 13 ¶ 12 (citing *Marangi v. Gov't of Guam*, 319 F.Supp.2d 1179, 1186 (D. Guam 2004)) (emphasis added). By contrast, a permanent injunction requires a showing that "[the plaintiff] has suffered an irreparable injury." *See Valencia v. Sapla*, Super. Ct. Guam CV0085-16 (Findings of Fact and Conclusions of Law at 9, Jun. 2, 2017) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)); *Farmer's Coop. Ass'n of Guam v. McDonald*, Super. Ct. Guam CV1125-

14 (Dec. & Order at 16, Feb. 6, 2015) (same). In other words, the preliminary-injunction inquiry focuses on whether the plaintiff faces imminent harm before the case can be fully heard, whereas a permanent injunction is evaluated only after the Court has considered the full presentation of evidence and determined whether the plaintiff has in fact suffered an injury warranting this relief.

This distinction undermines TBC and HTSM's reliance on Presiding Judge Lamorena's Decision and Order. The denial of preliminary relief reflects only that Larry did not satisfy the requirements for a temporary injunction or preliminary injunction at that early stage of the litigation; it does not constitute a determination that he cannot establish irreparable harm on a full evidentiary record. Therefore, Presiding Judge Lamorena's Decision and Order does not foreclose the Court from granting permanent injunctive relief should the Court, after holding a full hearing on the merits, determine that such relief is appropriate.

Accordingly, TBC and HTSM's reliance on the prior denial of the preliminary injunction is misplaced, and the Court **DENIES** the Motion to Dismiss of TBC and HTSM as to Larry's request for permanent injunction.

### III.    Motion to Dismiss by Evergreen

Evergreen moves to dismiss all claims asserted against it on the grounds that Larry fails to state any cognizable claim. Evergreen's Mot. at 1–2. Evergreen argues that it owed no fiduciary duty to Larry as a matter of law, and that Larry alleges only conclusory assertions of fraud without identifying any misrepresentation, intent, reliance, or resulting damages. *Id.* at 3–5. Evergreen further contends that Larry's second and third causes of action are derivative in nature and must be dismissed because Larry did not make a pre-suit demand or plead particularized reasons for failing to do so, as required by Rule 23.1. *Id.* at 5–6. Finally, Evergreen argues that Plaintiff has not alleged any facts triggering dissolution under the Operating Agreement or Guam law, and that

his request to enjoin other members from conducting business violates the Agreement and GRCP Rule 65. *Id.* at 6–7.

### A. Larry Failed to State a Claim for Breach of Fiduciary Duty as to Evergreen Because Evergreen Does Not Owe Larry a Fiduciary Duty

Generally, an LLC does not owe a fiduciary duty to its members. *See, e.g., Cosma v. Fit Kitchen, LLC*, No. 22 CVS 7915, 2022 WL 2815117, at *2 (N.C. Super. July 18, 2022) ("[A]n LLC does not owe a fiduciary duty to its members."); *Yonkov v. Maximus Holding Grp. LLC*, 2024 WL 2300967, at *4 (N.D. Ohio May 21, 2024) ("As an LLC is an entity, like a corporation, that can only act through its agents or managers, it makes sense that the entity alone does not owe a duty to its members. Rather the fiduciary duty rests on the member or manager that acts for the LLC."); *see also Harris v. TLS Mgmt. & Mktg. Servs., LLC*, 2019 WL 7763990 at *4 (D.P.R. Mar. 18, 2019) ("It is settled law in many jurisdictions that a corporate entity does not have a fiduciary duty toward its members or stockholders; rather, that duty is held by the corporation's officers and directors.").

Here, Evergreen, as an LLC, does not owe Larry, as a member, a fiduciary duty. Larry has not identified any legal authority to the contrary. Because a fiduciary duty is a necessary element of a breach of fiduciary duty claim, Larry has not sufficiently pled this claim against Evergreen. The Court also finds that since no amendment of the Complaint could devise a duty that Evergreen owes Larry, his Motion for Leave to Amend as to this claim is also **DENIED**. Accordingly, the claim of breach of fiduciary is **DISMISSED** as to Evergreen.

**B.** **Larry Failed to State a Claim to Separate the Assets of Evergreen and for an Accounting Because He Has Not Shown Compliance with the Demand Requirement Under GRCP Rule 23.1**

A member of an LLC, just like a shareholder of a corporation, may sue derivatively. *See Bischoff v. Boar's Head Provisions Co.*, 436 F. Supp. 2d 626, 631–32 (S.D.N.Y. 2006) ("[B]ecause an LLC is a hybrid of the corporate and limited partnership forms, its members should have the same rights as corporate shareholders and limited partners, including the right, under common law, to bring derivative claims."); *Rose Goodyear Props., LLC v. NBA Enters. Ltd. Pship*, 235 Ariz. 339, 344, 332 P.3d 86, 91 (Ct. App. 2014) (noting that "a member of an LLC may bring a derivative action"); *Condon v. Kadakia*, 661 S.W.3d 443, 453 (Tex. App. 2023) ("Under Delaware law, when a claimant seeks recovery for an injury to a limited liability company, that claim belongs to the company and can be brought by a member only as a derivative claim.").

In bringing a derivative lawsuit, an LLC member must also comply with the demand requirement under Rule 23.1. *See Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008) (noting that a derivative lawsuit against directors of a Delaware LLC must comply with the demand requirement); *Barone v. Sowers*, 128 A.D.3d 484, 484, 10 N.Y.S.3d 22, 23 (2015) ("The demand requirement of Business Corporation Law § 626(c) also applies to members of New York limited liability companies."); *Star v. TI Oldfield Dev., LLC*, 962 F.3d 117, 128 (4th Cir. 2020) ("And as to [the plaintiff']s eighth through seventeenth causes of action, the Special Master concluded that although they were not duplicative of the [LLC] Boards' claims, they failed to meet Rule 23.1(b)'s demand requirement because [the plaintiff] failed to 'state with particularity' that he had made a pre-suit demand of the Boards.").

Because the Court has determined that Larry has not adequately pled compliance with the demand requirement for the claim to separate assets and for the claim of accounting against TBC

and HTSM, the Court likewise finds Larry has failed to sufficiently plead compliance with the demand requirement for the corresponding claims against Evergreen. However, since amendment may cure these deficiencies, the Court **DENIES** Evergreen's Motion to Dismiss and **GRANTS** Larry's Motion for Leave to Amend these claims against Evergreen.

### C. Larry Failed to State a Claim for Partition Because Plaintiff Has Not Shown that He Owns the Property He Seeks to Partition.

Guam law on partition does not distinguish between the assets of an LLC and those of a corporation, and the Court's analysis of Larry's claims regarding TBC and HTSM applies with equal force here. The Court notes that as with a shareholder and his or her corporation, a member of an LLC does not own the LLC's property, both under Evergreen's Operating Agreement and applicable case law. Article 5.8 of the Evergreen Operating Agreement provides that "the Manager shall cause all assets, whether real or personal, . . . be held in the name of the Company." *See* Decl. of Camacho, Ex. at 14 (Dec. 9, 2015) ("Decl. of Camacho"). This provision is consistent with the well-established principle that LLC members have no ownership interest in company assets. *See In re Brittain*, 435 B.R. 318, 322 (Bankr. D.S.C. 2010) ("The members of an LLC 'have no property interest in property owned by [the LLC].'"); *Ecco Plains, LLC v. United States*, 728 F.3d 1190, 1197 n.10 (10th Cir. 2013) ("[LLCs] generally operate under an entity theory of property rights. Under this theory, a member has no interest in the property owned by the LLC.").

The Court further observes that its consideration of the Operating Agreement does not convert Evergreen's Motion to Dismiss into a motion for summary judgment.[12] On a Rule 12(b)(6) motion, a court may consider "written instruments attached to the complaint as exhibits" as well

---

[12] The Court further notes that neither Larry not Evergreen has argued that conversion is required.

as "statements or documents incorporated in the complaint by reference." *Core Tech Int'l Corp. v. Hanil Eng'g & Constr. Co.*, 2010 Guam 13 ¶ 29.

Here, the Complaint expressly refers twice to a "management agreement." *See* Compl. ¶ 15 (alleging that "control of Defendant Evergreen has been removed from Plaintiff without any amendment of the Articles or management agreement"); ¶ 30 (referring to "the Articles and Management Agreement of Defendant Limited Liability Company Evergreen"). The Court finds that this "management agreement" is the same document as Evergreen's Operating Agreement because Article 1.1 of Evergreen's Articles of Organization—attached to the Complaint as Exhibit 5—states that any reference to an "Agreement" means "the Operating Agreement of Evergreen Investments LLC, as originally executed and as amended from time to time." *See* Compl., Ex. 5 at 1. Thus, because the Complaint incorporates the Operating Agreement by reference, the Court may properly consider it in resolving Evergreen's Motion to Dismiss without converting the motion into one for summary judgment.

Because no amendment can transform property held in Evergreen's name into Plaintiff's personal property, amendment would be futile. The Court therefore **DENIES** the Motion for Leave to Amend and **GRANTS** Evergreen's Motion to Dismiss as to the partition claim.

> **D.** **Larry Failed to State a Claim for Dissolution of Evergreen Because He Failed to Allege Facts that Trigger Dissolution under Either Guam Law or the Operating Agreement of Evergreen**

A limited liability company may be involuntarily dissolved by court decree in an action brought by the Attorney General when it is established that the company was formed through fraud, acted *ultra vires*, violated the law in a manner resulting in forfeiture of its charter, engaged in persistently fraudulent or illegal conduct, or otherwise abused its powers contrary to public policy. 18 GCA § 15127(a). In addition, the Guam Department of Revenue and Taxation may dissolve an

25

LLC for failing to file annual reports or pay required fees, failing to maintain a registered agent, or failing to update registered agent or office information. 18 GCA § 15127(b). The statute further preserves the right to seek annulment or dissolution on any other grounds provided under Guam law. 18 GCA § 15127(e).

Evergreen's Operating Agreement also specifies certain events that trigger dissolution. Evergreen "shall be dissolved" upon the death, incapacity, bankruptcy, withdrawal, or dissolution of a member; the expiration of Evergreen's term of existence; unanimous written agreement of the members to dissolve; the sale or other disposition of substantially all of Evergreen's assets; or the entry of a decree of judicial dissolution under 18 GCA § 15127. Decl. of Camacho, Ex. at 22–23.

Here, the Court is presented with neither an action by the Attorney General nor an administrative dissolution by the Department of Revenue and Taxation. Accordingly, Plaintiff cannot rely on § 15127 to dissolve Evergreen. Furthermore, Larry has also not pled any facts to trigger dissolution under the Operating Agreement. For that reason, Larry's dissolution claim against Evergreen is insufficiently pled.

Taken all the facts alleged as true, the Court finds that none of the provisions triggering dissolution applies here. However, because an amendment might allege facts that trigger dissolution under either § 15127 or the Operating Agreement, the Court **DENIES** Evergreen's Motion to Dismiss and **GRANTS** Larry's Motion for Leave to Amend as to this claim.

E. **The Court Dismisses Larry's Claim for Preliminary Injunction for Lack of Irreparable Harm**

Larry requests preliminary injunction against Evergreen on the same ground that he requested preliminary injunction against TBC and HTSM. *See* Compl. at 12–13. Because Presiding Judge Lamorena has already found Larry's request for preliminary injunction against TBC and

HTSM as lacking irreparable harm, P.J. Lamorena's Decision at 5, the Court likewise finds that Larry's claim of preliminary injunction deficient in its showing of irreparable harm and **DISMISSES** Larry's request for preliminary injunction.

### F. Evergreen's Operating Agreement Does Not Categorically Bar Larry's Request for Permanent Injunction

As the Court touched on previously, to obtain a permanent injunction, the plaintiff "must establish: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Valencia*, Super. Ct. Guam CV0085-16 (Findings of Fact and Conclusions of Law at 9, Jun. 2, 2017). Evergreen does not contend that Larry has failed to plead any of these elements; instead, Evergreen argues that the permanent injunction that Larry seeks would violate Evergreen's Operating Agreement, which "provides for procedures for conducting meetings, and in most cases, actions only require a majority of the members to approve an action." *See* Evergreen's Mot. at 7.

The Court does not find Evergreen's argument persuasive. The Operating Agreement governs the internal procedures of Evergreen, but it does not insulate Evergreen's members from judicial oversight when, as here, such members allegedly exercise their powers in a manner that causes irreparable harm to another member. Moreover, the Court's analysis above—*see supra* Section II.H—applies in this context: although the Court declined to find irreparable harm at the preliminary-injunction stage, Larry may still be able to establish the elements necessary for a permanent injunction after a full hearing on the merits. For that reason, the Court **DENIES** Evergreen's Motion to Dismiss as to Larry's claim for a permanent injunction.

## IV.   Motions to Dismiss by Christina

Christina moves to dismiss all seven counterclaims under Rule 12(b)(1) and 12(b)(6), arguing they are derivative corporate claims that Wing Chi, as an individual shareholder, lacks standing to assert because the alleged harms are injuries to the corporation, with any personal damages merely incidental. Christina's Mot. at 2–3. She further seeks dismissal of the Seventh Claim ("Conspiracy to Defraud") because conspiracy is not an independent tort, she owed no fiduciary duty, and the claim fails Rule 9(b)'s particularity requirement. *Id.* at 3–5. Christina also argues the Second Claim ("Aiding and Abetting Breach of Fiduciary Duty") sounds in fraud and must meet Rule 9(b), but the allegations—such as concealment of records and wrongful payments—are conclusory and lack the required specificity. *See id.* at 5–6.

### A.   The Stipulation and Order Staying Action Issued on February 25, 2016 Did Not Strip Christina of Her Right to File a Motion to Dismiss

Before considering the merits of Christina's Motions to Dismiss, the Court first addresses Wing Chi's attack on the procedural propriety of Chirstina's Motion to Dismiss his counterclaims before the Court. Wing Chi argues that her Motion was improperly filed because "the Stipulation and Order of February 22, 2016 only permitted [Christina] Au to file an 'answer' to the Counterclaims of Wing Chi Tsang within a definitive time period, i.e., 20 days after the expiration of the stay." Wing Chi's Opp'n at 2. The Court disagrees with Wing Chi's reading of the Stipulation and Order.

The Stipulation and Order states that "[t]he parties stipulate to stay this action in its entirety, including all deadlines, motions, and hearings in this action, until April 25, 2016." Stip. and Order at 2 (Feb. 25, 2016). It goes on to provide: "Counsel for Christina L.H. Au and Counsel for Wing On Tsang, Kam Wing Tam, and Wing Chi Tsang stipulate that the deadlines for (i) Christina L.H.

28

Au's answer to the Counterclaims of Wing Chi Tsang, and (ii) Wing On Tsang's and Kam Wing Tam's Opposition to Christina Au's Motion to Dismiss (filed January 19, 2016), shall be held in abeyance during the stay, and that the answer and opposition shall not be due until twenty (20) days after the expiration of the stay (including any extensions thereto), or twenty (20) days after the date of the Court's written order lifting the stay, whichever comes first."

The Stipulation and Order does not prohibit Christina from filing a motion to dismiss, nor does it contain language restricting her to an answer alone. It merely deferred the deadline for an answer; it did not extinguish her rights under GRCP Rule 12(b) to file a responsive motion in lieu of an answer. Nothing in the Stipulation or the Court's Order states that a Rule 12 motion is barred, waived, or subject to prior court approval. Accordingly, under the language of the Stipulation itself, Christina's motion remains properly before the Court.

**B.      Christina Only Has Standing to Move to Dismiss Claims Asserted Against Her**

At the June 17, 2025 motion hearing, Christina's counsel, Attorney Gavras, conceded that Christina lacks standing to seek dismissal of the First, Third, Fifth, and Sixth Counterclaims because those claims are asserted only against Larry, not against her. Min. Entry at 11:05:10–11:05:16 A.M. (Jun. 17, 2025). The Court agrees. A defendant has no standing to move for dismissal of claims asserted solely against a different party. *See Tripharma, LLC v. First Fruits Bus. Ministry LLC*, 2023 WL 2695476, at *6 (C.D. Cal. Feb. 15, 2023) ("[A] party does not have standing to dismiss counterclaims asserted against [another defendant]."); *see also Chabad Lubavitch of Litchfield Cnty., Inc. v. Borough of Litchfield*, 2010 WL 1882308, at *3 (D. Conn. May 10, 2010) (institutional defendants lacked standing to dismiss claims asserted only against

29

individual defendants). Because Christina lacks standing to challenge these four counterclaims, the Court does not reach the merits of her motion as to the First, Third, Fifth, and Sixth Claims.

    **C.**    **Counterclaimants Have Stated a Claim for Aiding and Abetting a Breach of Fiduciary Duty**

        **1.**    **Counterclaimants Have Stated Enough Facts to Support Each Element of a Claim for Aiding and Abetting**

Under Guam case law, "the elements of the common law tort of aiding and abetting breach of fiduciary duty are: (1) the primary tortfeasor breaches a fiduciary duty which he owes to the victim-plaintiff; (2) the aider-abettor defendant has actual knowledge of the breach, *i.e.*, the specific primary wrong; (3) the aider-abettor defendant lends the primary tortfeasor substantial assistance or encouragement in committing the breach; and (4) the victim-plaintiff suffers damages proximately caused by the breach." *Lujan v. Girardi/Keese*, 2009 WL 2567302, at \*6 (D. Guam Aug. 18, 2009), *report and recommendation adopted sub nom. Lujan v. Girardi/Keese*, 2009 WL 5216906 (D. Guam Dec. 29, 2009).

Counterclaimants allege that: (1) as a shareholder in a closely held corporation, Larry owed fiduciary duties of loyalty, due care, candor, and utmost good faith directly to them as co-shareholders in TBC; (2) Larry breached those duties by diverting corporate funds for his and Christina's personal benefit, secretly causing corporate payments to be made to Christina (including purported "bonuses" and life-insurance premium payments), and by establishing and operating a competing construction-materials business to the detriment of TBC; (3) Christina knew of Larry's breaches and "was aware of, ratified, and/or cooperated with" them, and "actively participated in designing, implementing, directing, approving, and/or otherwise furthering" his wrongful conduct, including by concealing and altering corporate records, accepting and benefiting from diverted corporate monies, and actively managing and assisting in the competing

business; and (4) as a result, Counterclaimants suffered damages, including the loss of economic benefits and distributions associated with their ownership interests in TBC. *See* Countercl. ¶¶ 13, 20–28, 34, 52–60, 70–78. Taken as true, these allegations satisfy each element of a claim for aiding and abetting at the pleading stage.

Christina contends that because Counterclaimants are merely TBC shareholders, "they have no standing." Christina's Mot. to Dismiss at 2. However, this is not true in the context of a close corporation, a shareholder could have standing to sue other shareholders. A close corporation is characterized by "(1) a small number of shareholders; (2) no ready market for corporate stock; and (3) active shareholder participation in the business." 1A Fletcher Cyc. Corp. § 70.10, Westlaw (database updated Sep. 2025). TBC fits this definition: it was founded and closely held by the Tsang brothers. It is well-settled that shareholders in a close corporation owe fiduciary duties to one another. *See, e.g.,* Barth v. Barth, 659 N.E.2d 559, 561 (Ind. 1995) ("[S]hareholders in a close corporation stand in a fiduciary relationship to each other."); *Bodio v. Ellis,* 401 Mass. 1, 9, 513 N.E.2d 684, 688–89 (1987) ("The shareholders in a close corporation owe to each other duties of the utmost loyalty, trust, and confidence."); *Kortum v. Johnson,* 2008 ND 154, ¶ 28, 755 N.W.2d 432, 443 ("The fiduciary duty owed by close corporation shareholders to one another also includes a duty of loyalty."); *see also* 3 Fletcher Cyc. Corp. § 844.20 ("Close corporation shareholders, as such, stand in fiduciary relationship to each other."), Westlaw (database updated Sep. 2025). Because TBC is a close corporation and Counterclaimants have alleged personal harm arising from breaches of these duties, they have adequately stated a claim for aiding and abetting breach of fiduciary duty.

## 2. Counterclaimants' Claim of Aiding and Abetting Breach of Fiduciary Duty Does Not Sound in Fraud

Christina further argues that the claim against her for aiding and abetting breach of fiduciary duty "sounds in fraud" and therefore is subject to the heightened pleading requirement under GRCP Rule 9(b). The Court disagrees.

"Rule 9(b) applies when (1) a complaint specifically alleges fraud as an essential element of a claim, (2) when the claim 'sounds in fraud' by alleging that the defendant engaged in fraudulent conduct . . . and (3) to any allegations of fraudulent conduct, even when none of the claims in the complaint 'sound in fraud.'" *Arnold v. Melwani*, 2011 WL 1317066 at *3 (D. Guam Mar. 31, 2011) (citing *Davis v. Chase Bank U.S.A., N.A.*, 650 F.Supp.2d 1073, 1089–90 (C.D. Cal. 2009)). A claim sounds in fraud when the plaintiff "allege[s] a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).[13] "In other cases, however, [the] plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003).

Counterclaimants' Second Claim alleges "some fraudulent and some non-fraudulent conduct." *See Vess* 317 F.3d at 1104. Specifically, the Second Claim is pled as a claim for participation in and/or aiding and abetting breach of fiduciary duty against Christina, which does not require fraud as an essential element. *See* Counterclaim ¶¶ 53–60. The gravamen of the cause

---

[13] Because Rule 9(b) is "mirrors its Federal counterpart, Ninth Circuit authority construing the federal rule is persuasive when interpreting the Guam statutory rule." *Kerrigan v. Gill*, Civ. No. 95-00072A, 1996 WL 104517, at *3 (D. Guam App. Div. Mar. 6, 1996) (found persuasive Ninth Circuit case law on Rule 60(a) of the Federal Rules of Civil Procedure).

of action is that Christina (1) knew that Larry owed fiduciary duties to Counterclaimants, (2) knew that he was breaching those duties, and (3) "was aware of, ratified, and/or cooperated with" and "actively participated in designing, implementing, directing, approving, and/or otherwise furthering" his wrongful conduct, including "the wrongful payment of tens of thousands of dollars to her personal benefit" and accepting placement as beneficiary on life-insurance policies funded with corporate monies. *Id.* ¶¶ 57–58. Those allegations of participation in a fiduciary breach are not necessarily fraudulent and thus are not governed by Rule 9(b).

At the same time, the Second Claim also incorporates some allegations that are expressly "fraudulent" in character, such as the assertion that Larry "fraudulently represented" the purpose and beneficiaries of the life-insurance policies, and that Christina participated in or benefitted from that misrepresentation and from "concealment and alteration of corporate records." *See id.* ¶ 58; *see also id.* ¶¶ 24–25. Under *Vess*, only those discrete allegations of fraudulent conduct—the misrepresentation and concealment components—must satisfy Rule 9(b)'s heightened standard, while the remainder of the aiding-and-abetting theory proceeds under the more liberal notice-pleading standard. *See Vess*, 317 F.3d at 1104. The Court therefore examines whether the Counterclaim satisfies Rule 9(b) as to those allegations.

"Rule 9(b) does not require a plaintiff to prove a claim of fraud at the pleading stage." *Ukau v. Wang*, 2016 Guam 26 ¶ 47 (citation omitted). "Rather, what is required is that a plaintiff set forth his claim with sufficient detail to provide notice to defendants as to what particular fraudulent action is being alleged." *Taitano v. Calvo Fin. Corp.*, 2008 Guam 12 ¶ 16, *aff'd on reh'g*, 2009 Guam 9 ¶ 16. "This standard has been described as a 'who, what, when, where, and how' requirement." *Ukau v. Wang*, 2016 Guam 26 ¶ 47.

33

The Counterclaim specifies who (Larry and Christina), what (wrongful "bonus" and personal payments totaling tens of thousands of dollars, life-insurance premiums in the tens of thousands of dollars with Christina as beneficiary, and diversion of corporate funds from identified entities), when (during the period of Larry's management up to and including his termination in February 2014, and continuing thereafter), from where (TBC and Evergreen bank accounts), and for whose benefit (Larry and Christina personally, including real-estate and business acquisitions). *See, e.g.*, ¶¶ 24–25, 57–59. These allegations provide the "who, what, when, where, and how" of the alleged misconducts, *see Ukau*, 2016 Guam 26 ¶ 47, and are therefore sufficient to give Christina notice of the nature of the claim and to satisfy Rule 9(b) as to any fraud-based allegations.

In sum, Counterclaimants' aiding-and-abetting claim contains both fraud and non-fraud elements. The non-fraud allegations are properly pled under Rule 8(a), and the fraud allegations are pled with sufficient particularity under Rule 9(b). Accordingly, the Court **DENIES** Christina's Motion to Dismiss as to the claim for aiding and abetting breach of fiduciary duty.

### D.     Counterclaimants Have Stated a Claim for Conspiracy to Defraud

#### 1.     Counterclaimants Have Alleged Enough Facts to Support a Claim for Civil Conspiracy to Defraud

"A prima facie showing of civil conspiracy requires the plaintiff to allege in his complaint '(1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts.'" *Moylan v. Citizens Sec. Bank*, 2015 Guam 36 ¶ 72 (citing *Wasco Products Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006)).

Counterclaimants have alleged enough facts to support the Seventh Claim. Specifically, they allege that Counterclaim Defendants Larry and Christina formed and participated in a

34

conspiracy to defraud by agreeing to and acting in concert to wrongfully divert and conceal corporate funds belonging to TBC and Evergreen for their own personal benefit, including through unauthorized withdrawals, improper "bonus" and other payments to Christina, and the use of those funds to purchase real property and to establish and operate a competing business. Countercl. ¶¶ 24–25, 27–30, 58–59, 98–101. They further allege multiple overt wrongful acts taken in furtherance of that agreement, such as the conversion of over $53,000 from TBC and over $77,000 from Evergreen, the mischaracterization of approximately $87,000 in life-insurance premium payments, the manipulation and concealment of corporate financial records, and the maintenance of delinquent insider charge accounts. Countercl. ¶¶ 24(a)–(e), 25(a)–(d), 58. Finally, Counterclaimants allege that as a direct and proximate result of these concerted actions, they suffered damages, including the loss and dissipation of corporate assets, diminution in the value of their ownership interests, and lost profits and distributions. Countercl. ¶¶ 60, 78, 101. Taken as true, these allegations satisfy all three elements of a civil conspiracy and are sufficient to state a prima facie claim at the pleading stage.

### 2. A Civil Conspiracy Claim Does Not Require that the Co-Conspirators Owe a Duty to the Injured Party

Christina argues that Counterclaimants have not stated a claim for conspiracy to defraud because they failed to allege that Christina owed the corporate entities a fiduciary duty. Christina cites to *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1597 (Cal. Ct. App. 1995), which states that "Conspiracy is not an independent tort; it cannot create a duty . . . it allows recovery only against a party who already owes a duty." The question before the Court is whether owing a fiduciary duty to the corporation is an element of a conspiracy to defraud claim.

35

When considering a claim of civil conspiracy, the Guam Supreme Court has recognized that "[i]n other jurisdictions, civil conspiracy is either an independent tort . . . or a theory of vicarious liability" and that "[i]n both circumstances, the law imposes liability for damages stemming from the actions of two or more people working together to cause harm." *See Chung v. Blair Constr. Co.*, 2019 Guam 28 ¶ 26 (citations omitted); *see also id.* ¶ 27 ("These facts alone support a potential claim for civil conspiracy as an independent tort."). This Court acknowledges that courts elsewhere are split on whether a co-conspirator must owe an independent duty, *cf. Chance World Trading E.C. v. Heritage Bank of Com.*, 2004 WL 2359857, at *3 (N.D. Cal. Oct. 15, 2004) ("Liability under a civil conspiracy requires the co-conspirator have an independent duty to the plaintiff.") *with Javitch v. Capwill*, 2011 WL 1002744, at *3 (N.D. Ohio Mar. 15, 2011) ("Civil conspiracy does not require the existence of a duty on the part of the alleged co-conspirator."). However, the Guam Supreme Court has neither adopted nor endorsed such a requirement. If anything, its discussion in *Chung* suggests that the existence of a separate duty is not a prerequisite to pleading a civil conspiracy claim under Guam law. Accordingly, the Court finds that Counterclaimants need not allege that Christina owes the corporate entities a fiduciary duty to plead a claim for conspiracy to defraud.

### 3. Counterclaimants' Claim for Conspiracy to Defraud Has Met the Requirements of GRCP Rule 9(b)

Lastly, Christina argues that the Seventh Claim is subject to the heightened pleading requirement of Rule 9(b).

The Court finds that Counterclaimants have satisfied the requirements of Rule 9(b). The Seventh Claim expressly incorporates by reference all preceding factual allegations, Countercl. ¶ 97, which lay out in detail the who, what, when, where, and how of the alleged fraud and

36

conspiracy. The "who" is clearly identified as Larry and Christina, who are alleged to have acted together to divert and conceal corporate funds to their personal benefit. Countercl. ¶ 99. As to the what, when, where, and how, the Counterclaimants rely on their allegations set out in paragraphs 24 and 25 of the Counterclaims. Min. Entry at 10:53:42-10:55:30 A.M. (Jun. 17, 2025).[14] The "what" consists of specific wrongful acts such as converting over $53,000 from TBC and over $77,000 from Evergreen after Larry's termination, Countercl. ¶ 24(a), (b); issuing unauthorized "bonus" payments of $45,000 and other personal payments of $80,000 to Christina, Countercl. ¶ 24(c); causing approximately $87,000 to be paid to Christina under the guise of life-insurance premiums while making Christina the beneficiary of policies insuring Larry, Countercl. ¶ 24(d); allowing Christina to open and mismanage charge accounts and maintain her own delinquent balance exceeding $30,000, Countercl. ¶ 25(b); and using those diverted funds to purchase real estate and capitalize a competing business. Countercl. ¶ 25(a). The "when" is alleged as the period during which Larry controlled TBC, HTSM, and Evergreen, up to his termination in February 2014 and continuing thereafter—"during the time period that Larry Tsang controlled the management and operations" of the businesses and "for a period of time afterward," and "after Counterclaim Defendants were terminated."[15] Countercl. ¶¶ 24–25. The "where" is identified as

---

[14] The Court notes that although these allegations are not expressly pleaded under Count Seven, they are nonetheless sufficient to sustain the claim. *See Ukau v. Wang*, 2016 Guam 26 ¶¶ 44–48 (holding that allegations describing the "circumstances surrounding the fraud," incorporated into a fraudulent transfer count, were sufficiently particular to satisfy Rule 9(b) of the Guam Rules of Civil Procedure).

[15] The Guam Supreme Court has held that "[i]n cases where the exact timing of specific events is critical for determining fraud, for example statements expressing optimistic corporate performance in securities fraud cases, lack of precision in alleging dates can be fatal to a pleading." *Taitano*, 2008 Guam 12 ¶ 28 (citation omitted). Where the "the exact dates are not critical to the claim, their lack of specificity weighs against a finding that the pleadings are sufficient under Rule 9(b)." *Id.* Here, the context differs from the securities-fraud scenario contemplated in *Taitano*, as the Seventh Count for Conspiracy to Defraud does not hinge on pinpointing the exact dates of the alleged misconduct. Instead, what matters is the allegation that Larry and Christina's actions—such as converting corporate funds or issuing unwarranted bonuses—occurred while Larry controlled and managed the corporations. Thus, even if the Court finds the "when" inadequately pled, that shortcoming merely weighs against, but does not defeat, Rule 9(b) sufficiency, given that the other aspects of the pleading—"who," "what," "where," and "how"—are well-pled.

the Guam businesses themselves—TBC, HTSM, and Evergreen, Countercl. ¶¶ 24–25. Finally, the "how" is extensively detailed: unauthorized checks and withdrawals, Countercl. ¶ 24(a), (b); disguised payments booked as insurance premiums, Countercl. ¶ 24(d); improper bonuses and personal payments to Christina, Countercl. ¶¶ 24(c), 25(a); creation and use of delinquent charge accounts, Countercl. ¶ 25(b); concealment and removal of corporate books and computer records, Countercl. ¶ 25(c), (d); and the establishment and operation of a competing business using misappropriated funds, Countercl. ¶ 25(a). The Court finds that these detailed factual averments adequately put Christina on notice of the fraudulent conduct alleged and therefore satisfy Rule 9(b). Accordingly, the Court **DENIES** Christina's Motions to Dismiss as to the claim for conspiracy to defraud.

## CONCLUSION

For the reasons set forth herein, the Court **GRANTS IN PART** and **DENIES IN PART** the Motions to Dismiss by Defendants TBC, HTSM, and Evergreen, and **DENIES** Counterclaim Defendant Christina Au's Motion to Dismiss. Should Plaintiff Larry Tsang choose to amend his Complaint, the Court further **ORDERS** that Plaintiff file his Amended Complaint within thirty (30) days after the issuance of this Decision and Order.

**SO ORDERED** this 9th day of December, 2025.

**HONORABLE DANA A. GUTIERREZ**
Judge, Superior Court of Guam